The last case being argued today is We The Patriots USA, Inc. v. Connecticut. And we have Mr. Pattis for the appellants. You deserve three minutes for rebuttal. You can begin whenever you're ready. Thank you, sir. My name is Norm Pattis. I'm here on behalf of the appellants. The pragmatic reality that drives this suit are the situation of plaintiffs who, for religious reasons, don't want their children to be vaccinated, but for all the reasons the law respects and honors, want their children to be educated. And they're placed perilously close into the position that Kathleen Sullivan contemplated in the unconstitutional conditions essay. If they elect to exercise their religious freedom and their right to control the education of their children, the state says you cannot be educated. And you cannot be educated not just in a public school, but in a private school. And because you have no fundamental right to education, that's on you. And if you make that choice, what's likely to occur, if you're a person of limited means and you would lack the ability to homeschool, is a truancy proceeding will issue. And your right to raise your child at all will be held in jeopardy because you will not have provided them with an adequate education. We concede that there are public health emergencies that require vaccination. We think what the state is looking for, they largely told you on page 46, you know, to suggest that no, of its brief, no institution can escape these requirements as to lead to the conclusion that no individual can do so as well. That's how we read what they want to say. They wouldn't imagine a universe in which all children, whether homeschooled or not, would be required to be vaccinated because that would permit lawless entry into the home or warrantless entry into the home to vaccinate the unschooled. So what they've said is every institution in which a child receives a vaccination must be done to assure public safety. Where do you draw the line? There were no exemptions here. There were no exemptions, no medical exemption, no religious exemption. Your argument would be foreclosed by Phillips, right? You know, we tried to dis- I mean, how is this, how is your argument foreclosed by Phillips and Hochul? Well, we scored quite heavily on Hochul. To address Phillips first, we think Phillips raised two issues, the general power, but then the issue before the court is what do you do in a situation where there's a sudden outbreak? I can't remember if it was measles or not. And the two appellants who had issues ripe for consideration, that was the issue this court decided. Along the way, it concluded the state has this right and there's nothing really that can be done about it. Hochul followed Phillips in that way, but we think without an adequate analysis of what, with all due respect, of what's really at issue here. And what's at issue, and I refer to this as the Antigone problem. You'll recall from Sophocles' play that the king wanted Antigone's brother to not enjoy the customary right of a Greek burial, which would have been sacrilege to any Greek, and because he'd violated the law. And what did Antigone say? There are some laws that are higher than yours, King Creon, and I suspect that's the case. And isn't that a tradition that the First Amendment has always honored? Another way of asking it is, in light of Phillips, GO, aren't we bound by our precedents here? Yes and no. I mean, GO deals with fundamental rights to education and to life and liberty. It didn't rise in the context of a religious exemption. And it's our position that when a religious exemption is claimed, it is always- Well, it did, but I think as I read the decision, I didn't read the underlying pleadings, and I may have misread the decision. I'm aware that you were one of its authors, I believe. As I read that decision, what was before the court was whether there were fundamental liberty interests, not whether there- Well, one of the issues was whether there's a fundamental right to education. But that's a different issue than the right to free exercise, and why we think there should still be a hybrid analysis because of the fundamental character of that right within our tradition. We projected the idea that there's a hybrid analysis. I know other circuits may disagree with that, but I think we're bound by that. But I thought you were making a potentially more narrow argument, which I was going to ask the state about, which is because there is a medical exemption but not a religious exemption, that strict scrutiny should apply here because there is no general applicability under Smith. We briefed that, but to be candid, I'm persuaded that the state has the better argument in its brief after having read it numerous times because while there is discretion in application of the medical exemption based on the adequacy of the papers provided, there appears to be no discretion with respect to the religious exemption. And so it's almost we're mixing apples and oranges. I don't think there's any danger that a person's medical exemption is going to be held against them on religious grounds. I don't see it that way. Right. Not on the discretion part of individual exemptions, but on just the more general applicability. Do you see that as well? No, I don't. Because I think what the state really wants to say and what it's asserting in its brief, at least constructively in my view, is that unless every child is vaccinated, there's a public health risk. And we, the state, want to eliminate that. But we don't have the means to do it directly by going into the home and saying at age four, we're going to grab that child from the mother's arms and inoculate it. So we're going to use a proxy. And the proxy is this necessary portal, education. And people with religious convictions who seek to walk through that portal are going to be penalized in ways that others aren't. And thus, we don't think it's narrowly tailored to accomplish what the state really wants, given the importance of free exercise and the right to raise and childbearing is recognized in all sorts of decisions. So our view is that GO doesn't block this. Philips, you can read Philips to do so and avoid the drama that this case presents, and that is the parents with serious religious objections to vaccination who believe that if they choose to educate their children, they'll be violating a fundamental belief of theirs. And if they don't, they may lose the child to the state in a truancy position. They mentioned in their opposition, and I don't think you filed a reply, so you didn't have a chance to address it, but the Rockland County case that is pending before another panel that was argued several months ago, I think implicates some of the same legal issues here, right? Or am I missing something? I didn't see it that way. I didn't see what I'll call the pragmatic reality of the parent's position at stake, and that is if you believe that it's sin to have your child vaccinated and you can't educate the child, where do you go? Do you leave the United States, or do you do what the Pilgrims do and say, hey, we're dissenters, we came here? I'm suggesting here that that panel may foreclose the arguments that you're making here with respect to distinguishing Philips. That may be the case. All right, thank you. Thank you. All right, Mr. Cunningham. Assistant Attorney General Dan Cunningham for the state of Connecticut. Your Honor's counsel may please the court. Childhood vaccinations are one of the most significant public health interventions of all time. As this court recently explained, vaccinations protect communities from serious vaccine-preventable diseases through immunization. Indeed, since this case was filed, the state of New York has declared a state of emergency to boost polio vaccination rates amid evidence the virus is spreading in communities. Faced with both a decreasing school vaccination rate and outbreaks in surrounding communities, the elected branches of government in Connecticut elected to phase out the religious exemption to school vaccination requirements. Well-established precedent from both the Supreme Court and this court support the district court's dismissal of the entire complaint. Why isn't there a potential general applicability question as it relates to this particular statute that is open, which is because there's a medical exemption, but not a religious exemption, that should be strict scrutiny rather than rational basis under Smith? Why isn't that something that at least at the motion to dismiss stage would be something that court could decide? So, Your Honor, we have two arguments about that. The first is that Phillips expressly foreclosed. There was a religious exemption in Phillips, so Phillips didn't have to examine this issue. There was no discussion of this. Actually, Phillips foreclosed this, and Hochul spent a lot of time going through whether or not it was generally applicable or not, right? So I think the answer is this. So under Phillips, there was not at present an exemption in New York, a religious exemption. But I believe in that case that what happened was the students who did have the religious exemption were excluded. So the court did have to certainly grapple. During an outbreak. Yes, yes. So the court certainly had to grapple with the issue of whether a religious exemption was required, because the students could not be excluded from the school if a religious exemption was required by the First Amendment. Let's assume Phillips leaves open this fact pattern. So explain to me why there isn't a potential general applicability problem if a student who is unvaccinated due to a medical exemption walks into the school. Correct me if I'm wrong, they are at the same risk of spreading a disease, a communicable disease, as the student who's unvaccinated due to a religious exemption. So the Supreme Court has said you look at the general applicability based upon the degree of risk associated with the activity. So why isn't that potentially, again, potentially a general applicability problem that strict scrutiny would then apply? Well, I would say because, Your Honor, you also have to look at the state's interest, and the state's interest is in- The state's interest is in preventing the spread of communicable diseases in schools. That's the state's interest. Well, it's also the safety of the students. Preserving the health. Right, the health and safety of the students themselves. By preventing the particular students who are either vaccinated, the students walking in, or, I'm confused. So it is the students, so it's twofold. You're not, the health of the students walking in, as they pointed out, you're not forcing the parents who have the religious objection to this. If the kid is homeschooled, that kid is subject to the same risk. You're not protecting that kid anymore because you're not compelling the vaccination whether you go to school or not. So my understanding of the state's interest is here, we want to prevent this from spreading within the schools. Isn't that the interest? It is the interest, Your Honor, and I can, to your scenario, I think- So how, in my scenario, how is there any difference in the risk of spreading the school based upon whether the kid is unvaccinated due to a religious exemption or a medical exemption? So in that narrow, there is not a distinction between someone who is claiming- Right, so there's a potential general equability problem, right? Well, I would say no, Your Honor. But if I could also say this, I think if we tried to forcibly vaccinate homeschooled students, attorneys such as Mr. Patas would surely come to your doors claiming that we could not do that. So I think the fact that the state is choosing a less intrusive method shouldn't be held against us. No, I wasn't suggesting that. I'm just suggesting what's the interest here because of that fact is preventing spread in schools. And if you look at it the way I've presented it to you, I'm having a hard time understanding why there's not a potential problem there. But in HOCAL, what they said was, you can look at it as a group, and because many, many more exemptions are taking place due to religious exemptions versus medical, that's creating the problem. And that's how you look at the risks. So the risks are different. But in HOCAL, they also suggested that this would be the subject of discovery. It's an undeveloped record, there's not enough for a plenary injunction here, but they did not foreclose the possibility. They even said, if it turns out that the risks are similar, this is problematic, I think was the underlying conclusion of HOCAL. So why shouldn't there at least be some discovery on? I know there was a chart that was attached to the complaint about numbers of vaccinations over time, but I'm not sure that that should be dispositive. So there are, yes, there is a test. So to your question about discovery, yes, there is a test in our complaint and it's- Yeah, it's like one chart, right? Well, it's very clear, yeah, it's a publication of HOCAL. For example, what's the level of herd immunity? So even if there is an uptick in medical exemptions, if it's not interfering with herd immunity, the argument could be that the risks are still the same, even if there is 3% for religious exemption, exemption only 1% for medical. So I'm suggesting that there's a lot of analysis that would need to go into that question rather than just looking at one chart. Well, so I think what's clear from the chart, and there's also earlier language, is that the trend in Connecticut was going in a dangerous direction. That's clear from the record. And also clear is the fact that there have been outbreaks of measles and polio in the surrounding communities. And I think the question becomes, what did the state of Connecticut have to wait to have happen before it took a proactive approach? And as the record is also clear, we've grandfathered- Because if the situation is as dangerous as you're suggesting, why would they have grandfathered in all these students for 12 years? So if a student is in kindergarten, for the next 12 years, that student will be going to school unvaccinated, right? Isn't that suggestive? That's right. So- The situation is not as dire as you're suggesting? Well, I think what it demonstrates is that the state was respective of reliance interests of parents who had their kids already in the school system, and they knew that it would be phased out. The kindergarten is really the age problem where the numbers are going up. The numbers Your Honor and I have been discussing are the ones that are trending in the wrong direction. Those are numbers presented in kindergarten. So it was not a logical, certainly not irrational- If you looked at it at strict scrutiny, there would be a lot of analysis of all these issues that we're talking about, right? Right. For example, because it has to be narrowly tailored, and I think there are over 40 states that have religious exemptions. Well over 40, and we don't know what the evidence is of any outbreak of measles or anything else in those states, right? Well, that's certainly true about the numbers Your Honor points to, but I would just like to remind the court of what was said in HOCAL, which is that the similar provisions to the issue in this case is facially neutral, because it does not single out employees who decline vaccination on religious grounds. So to Your Honor's point about general applicability and neutrality, I think that the HOCAL court addressed those issues. The HOCAL court said, with the record as undeveloped on this issue of comparability as presented here, we cannot conclude that the above vaccination requirements are per se not generally applicable. Noting this difference between medical exemptions and religious exemptions. But then it said, although these differences may, after factual development, be shown to be too insignificant to render the exemptions incomparable. So they left open the idea that it could be, after discovery, that the differences and risks between medical exemptions and religious exemptions are so insignificant that you would have to apply strict scrutiny. HOCAL left that open. So I would also point just to even the Smith case itself from 1990. In Smith itself, there was a medical exemption for the use of peyote in that case. And the court didn't apply strict scrutiny, certainly in that case, and ultimately upheld the law. And obviously, all these First Amendment free exercise cases that are relative to this come off of Smith, and most recently in Fulton. And that's where we get back to the state's interest in why it's neutral and not generally applicable, because the state has an interest in the safety of the children in the school system. If the, he was focusing on private schools. If you had 50 students in a private school who, for all religious reasons, it's a religious private school. They all want to be unvaccinated due to religious reasons. The private school, right, the parents would put them in there. Yes, your honor. Connecticut would preclude that. Yes, it would, your honor. But those same students could gather a church on Sunday in a church all together, and Connecticut wouldn't preclude that. They could spread it in church, but Connecticut doesn't want them spreading it in the classroom? Well, that is true, your honor. Does that make any sense? Well, I think that it makes sense in the sense that that could always happen with anybody who's not vaccinated. I know, but I'm suggesting if this were the strict scrutiny, there might be some problems, right? With the way it's crafted. Well, I'm not sure that- It's probably private schools. I think what your honor is saying is that basically the state would have to remove the medical exemptions. I think that's what we're sort of both dancing around. Because the problem, right, as you may see it, or triggering strict scrutiny is actually the medical exemptions. But I don't think it's- Or they could add back the religious exemption. I'm not suggesting they have to remove the medical, but if there was a problem with the strict scrutiny, they had to add back the religious ones. Or maybe craft it so that it would only apply during an outbreak. Craft it so that exemptions have to be less than the amount that would be necessary for herd immunity. I don't know, is the bottom line. But I'm just suggesting to you that it seems to me that there are issues that would be difficult for a court to just say on a motion to dismiss, there's no chance that this claim could ever prevail, no matter what the facts are. So- Does it matter that the medical exemption and the denial of a religious exemption are both designed to preserve the health of the citizenry? They serve the same end, even though they serve it in slightly different ways. Yes, your honor, they do. And again, the district court found, and we've argued that the health and safety of the students is paramount. And again, I think that that touches into why the medical exemption is required, because it furthers the state's interest. We would not want students- But some parents think their spiritual health of their children are equivalent to their medical health. So- Doesn't the state of Connecticut acknowledge that some residents of Connecticut feel that way? Yes, your honor, and if you notice, in all our papers, at no time do we question anyone's faith or the basis for their decisions in this regard. But the question becomes what the state is permitted to do in the face of outbreaks of communicable diseases. And that takes us back to over 100 years of the Supreme Court indicating that states have the power to, in fact, forcibly vaccinate persons within their jurisdictions. All right, all right. Thank you. I have another question that doesn't go to the heart of this case, but it's a matter of procedural significance, which is that the judge denied a right to replead, and she did so on the basis of a personal court rule which we explicitly ruled a few years ago was inappropriate and not permissible in the Lorelei case. Don't we need to overturn that? I mean, I don't think we need to overturn the ultimate ruling of no right to replead because she had an alternate basis for it. Which I think was more sustainable. But just tell plaintiffs, you will have the choice at a pre-motion conference before the court rules on this adequacy of your present complaint. You have to exercise the choice to replead and give up your present complaint without the court having ruled on its inadequacy. And if you don't do that, you will not have a right to replead after the court rules that your complaint is inadequate. We said in Lorelei that that is not permissible, and I think we need to say so again here. So your honor, I don't believe that the plaintiff's raised that argument. So I'm at a loss to be familiar with the case you're referring to. But certainly as your honor has presented it, that would certainly be problematic, I would think. I just haven't had occasion to read the case or address it. I wanted to ask you also about the Rockland County case. You didn't alert us to that in your brief. But do you agree that that could potentially touch on the legal issues that we're discussing here? I do. In fact, when the form C and D were filed in this case by Attorney Pattis' firm, it did not list that case, and I actually wrote to the assigned clerk and alerted to that fact. Thank you. Mr. Pattis, you have three minutes in the rebuttal. I don't know that I'll need it all. The reference to Jacobson is unavailing. Obviously, when we were dealing with the emergence of the pandemic, and everybody was running to court trying to figure out what to do, it's precedent, but it's pre-incorporation precedent. And I don't think it really does anything other than state broad policy objectives. We think strict scrutiny is applicable here, and Hochul denied a request for a preliminary injunction suggesting that discovery might work a difference in the outcome, and we think it might here. I mean, the hypothetical about 50 students going to a religious school, what is the state's interest in regulating children in a religious school any more than regulating 50 people who come to my house to be homeschooled? It's the identical interest, and they couldn't do one without the other. Now, presumably, I'd have to register and seek regulatory approval, but what the state has done is made it impossible for parents to say- But what do you think a state should do if, in fact, there are so many religious exemptions that it's bringing it below herd immunity? They do that, that there is a chart that suggests that the number of exemptions is up to 3%. It was trending that way, I'm not sure- What is a state to do in that situation? They're looking at the numbers, and they're saying, this is dangerous, there's too many religious exemptions. What would you suggest the state should do? I think do what it has, perhaps eliminate the exemption, but at least give it an opportunity for adequate fact-finding. I think what we're learning, at least my clients believe they're learning, is that the risk was overstated. And while numbers trended in a certain direction at one point, and the efficacy of vaccines was assumed, there are substantial reasons to question that now. And they are deeply concerned that the state's interest in the health of its citizens is dwarfing the parents' view of the spiritual health of their children, which is paramount in their view. So we think that strict scrutiny would militate in favor of sending it back, getting a closer look at this, identifying the factors, and we'll concede there could be a time where the very issue Phillips decided presents itself in this context. People are dropping in the streets, and maybe the state now needs to require everybody to be immunized. But to use the schools as a convenient- The state doesn't have to wait until people are dropping in the streets. No, I mean, it's overstatement to concede the point. There could be some lesser threshold, but then they're going to have to choose. Is it so emergent that everyone must be vaccinated, as was the case in Jacobson? Or are we going to use the schools as a proxy, because that's the easiest net to catch these kids? And are we catching them because of their religious convictions to the derogation of their fundamental religious rights and the rights of their parents? And it's our view that the current regime does that, so we urge a remand. All right, thank you, Mr. Patterson. Thank you, Mr. Cunningham. We'll reserve the decision.  Thank you, sir.